# In the United States Court of Federal Claims

No. 09-386V

Filed Under Seal July 27, 2017

Reissued for Publication: August 31, 2017[*]

|  |  |  |
|---|---|---|
| FORREST Q. SPAHN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | National Childhood Vaccine Injury Act, |
| v. | ) | 42 U.S.C. § 300aa–1 to –34 (2012); |
| | ) | Tetanus-Diphtheria Vaccine; Obsessive- |
| SECRETARY OF HEALTH AND | ) | Compulsive Disorder; Vaccine Rule 8; |
| HUMAN SERVICES, | ) | Attorney's Fees, Vaccine Rule 13; |
| | ) | Redactions, Vaccine Rule 18(b); RCFC |
| Respondent. | ) | 59. |
| | ) | |

*Paul S. Dannenberg*, Counsel of Record, Huntington, VT, for petitioner.

*Voris E. Johnson, Jr.*, Senior Trial Attorney, *Catharine E. Reeves*, Deputy Director, *C. Salvatore D'Alessio*, Acting Director, *Chad A. Readler*, Acting Assistant Attorney General, Torts Branch, Civil Division, United States Department of Justice, Washington, DC.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

Petitioner, Forrest Q. Spahn, seeks review of the September 11, 2014, decision of the special master denying his claim for compensation under the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa–1 to –34 (2012).  Petitioner alleges that the tetanus-diphtheria ("Td") vaccine that he received on June 19, 2007, significantly aggravated his

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 27, 2017 (docket entry no. 165).  The parties were given an opportunity to advise the Court, by August 28, 2017, of their views with respect to what information, if any, should be redacted.  On August 28, 2017, the parties filed a joint status report in which the petitioner requested that this Court redact from this opinion all references to the petitioner's name and to the decision of the Special Master, dated September 11, 2014 (docket entry no. 170).  On August 31, 2017, this Court issued an order denying the petitioner's request (docket entry no. 171).  And so, the Court reissues the Memorandum Opinion and Order dated July 27, 2017, without any redactions.

obsessive-compulsive disorder ("OCD").  Petitioner also seeks review of the October 29, 2014, decision of the special master granting-in-part and denying-in-part petitioner's motion to redact the special master's decision.  In addition, petitioner has moved for leave to file new evidence to support his Vaccine Act claim.

For the reasons set forth below, the Court: (1) **DENIES** petitioner's motion for review of the special master's September 11, 2014, decision and **SUSTAINS** the decision of the special master; (2) **DENIES** petitioner's motion for review of the special master's October 29, 2014, decision on petitioner's motion to redact and **SUSTAINS** the decision of the special master; (3) **DENIES** petitioner's motion for leave to file new evidence; and (4) **REMANDS** this matter to the special master for a period of 90 days, for the special master to resolve petitioner's pending motions for fees and costs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

In this Vaccine Act matter, petitioner, Forrest Q. Spahn, alleges that the tetanus-diphtheria vaccine that he received on June 19, 2007, caused a significant aggravation of his obsessive-compulsive disorder symptoms.  *See* Dec. at 1, 4; *see* Petition.  On September 11, 2014, the special master denied petitioner's claim for compensation under the Vaccine Act.  Dec. at 1.

#### 1.  Petitioner's Medical History

Petitioner's medical history is discussed in detail in the special master's September 11, 2014, decision and is summarized here.  *See generally* Dec.  Mr. Spahn was born in 1991 at 33 weeks of gestation.  Pet'r's Ex. 3 at 32.  Mr. Spahn had respiratory distress during delivery that caused anoxia (lack of oxygen), and he spent the first month of his life in the hospital.  Pet'r's Ex. 4 at 16; Pet'r's Br. at 11.  Vaccines were deferred throughout petitioner's childhood.  Pet'r's Ex. 4 at 21.  Prior to receiving the Td vaccine in 2007, Mr. Spahn suffered intermittent bouts of OCD.  Pet'r's Prehr'g Br., Sept 30, 2013, at 7.

On June 19, 2007, Mr. Spahn saw a pediatrician for a physical examination in anticipation of entering the ninth grade.  Dec. at 4.  The pediatrician noted at the time that Mr.

Spahn did not identify any health concerns. *Id*. At this appointment, Mr. Spahn received the Td vaccine. *Id*.; Pet'r's Ex. 5 at 1.

At the end of the summer of 2007, Mr. Spahn developed tics. Dec. at 4. On October 10 and 17, 2007, Mr. Spahn met with a clinical psychologist. Dec. at 5; Pet'r's Ex. 6. The psychologist noted that Mr. Spahn "exhibited repeated stereotypic movements with his hands and legs, as well as with his head and neck. He exhibited facial tics." Pet'r's Ex. 6. The psychologist also speculated that Mr. Spahn may have mild autism. *Id*. A school report created in April 2008 corroborates the onset of tics. Dec. at 5; Pet'r's Ex. 12 at 12. Specifically, this report states that petitioner started the school year with "a clear florid exacerbation of OCD symptoms involving a need to engage in repetitive behaviors," which began interfering with his school work. Dec. at 5; Pet'r's Ex. 12 at 12.

On November 30, 2007, Mr. Spahn's father brought petitioner to the emergency room due to "an increase in OCD [symptoms] and stress at home." Pet'r's Ex. 2 at 35. Petitioner remained in the hospital for two weeks, and he underwent several forms of counseling at that time. Dec. at 6; Pet'r's Ex. 2 at 3. Ultimately, petitioner was diagnosed with autistic spectrum disorder, OCD, and tic disorder. Dec. at 6; Pet'r's Ex. 2 at 2. After the hospitalization, Mr. Spahn was examined by three physicians who each noted his tics. Dec. at 6; Pet'r's Ex. 12 at 6; Pet'r's Ex. 9 at 1; Pet'r's Ex. 12 at 11-13.

### 2. Proceedings Before The Special Master

On June 12, 2009, petitioner's mother filed a petition pursuant to the Vaccine Act alleging that Mr. Spahn was injured by the Td vaccine, resulting in Mr. Spahn experiencing symptoms of OCD. *See* Pet. In April 2010, the Secretary of Health and Human Services (the "Secretary") responded to the petition by arguing that petitioner failed to put forward evidence that the Td vaccine can cause tics. *See* Resp't's Rep't, April 23, 2010. As a result, the special master ordered petitioner to file an expert report to support petitioner's claim. Dec. at 7.

During the course of the proceedings before the special master, Mr. Spahn reached the age of majority, and he was designated as the named petitioner in this case. Dec. at 7, n.10; Order, Apr. 3, 2013. On April 25, 2011, Mr. Spahn filed an expert report authored by Dr. Burk Jubelt, a neurologist. Dec. at 7; Pet'r's Ex. 14. In the report, Dr. Jubelt opined that the Td vaccine contained thimerosal, and that thimerosal-containing vaccines can cause tics. *Id*. The

Secretary responded to Dr. Jubelt's expert report by arguing that the vaccine that petitioner received on June 19, 2007, contained only trace amounts of thimerosal. Dec. at 8; Resp't's Ex. A at 8.

On August 10, 2011, petitioner filed three scholarly articles regarding the safety of thimerosal authored by Nick Andrews, Kathleen Stratton, and Thomas Verstraeten, respectively. Dec. at 8; Pet'r's Ex. 17-1, 17-2, 17-3. Petitioner also filed findings regarding thimerosal from the Institute for Vaccine Safety and the Illinois Department of Public Health, as well as an additional expert report authored by Dr. Jubelt regarding the effects of thimerosal on Mr. Spahn. Dec. at 8; Pet'r's Ex. 15, 16, 17.

On September 1, 2011, the special master instructed petitioner to work with Dr. Jubelt to present a medical theory explaining how the Td vaccine can cause tics. Dec. at 8-9; Order, Sept. 1, 2011. To that end, on January 12, 2012, petitioner filed a third expert report authored by Dr. Jubelt. Dec. at 9; Pet'r's Ex. 18. Dr. Jubelt opined that thimerosal creates DNA breaks, citing a scholarly article written by David Baskin. Pet'r's Ex. 18, 18-1. Dr. Jubelt also opined that thimerosal can deplete glutathione, a chemical necessary to brain development. Pet'r's Ex. 18. To support this medical theory, Dr. Jubelt cited an article written by S.J. James. Pet'r's Ex. 18, 18-2.

The Secretary responded to Dr. Jubelt's expert report with expert reports that criticize the medical articles that Dr. Jubelt relied upon in his expert report. Resp't's Ex. A, C. The Secretary submitted an expert report authored by Dr. Jeffrey Johnson, a neurologist. Dec. at 9; Resp't's Ex. A, C. In that report, Dr. Johnson criticized the Andrews and Verstraeten articles relied upon by petitioner, because these articles studied infants who received a full battery of vaccines. Resp't's Ex. A. Specifically, Dr. Johnson opined that the aforementioned articles were irrelevant to this case, because Mr. Spahn received one Td vaccine as an adolescent. *Id.* Dr. Johnson also opined that the Baskin and James articles upon which petitioner relies were inapplicable to this case, because these articles address a higher dosage of thimerosal than Mr. Spahn received. *Id.* Lastly, the Secretary submitted an expert report authored by Dr. Michael Kohrman, a toxicologist, which similarly criticized the Andrews study, because that study involved infants. Resp't's Ex. C.

4

On May 22, 2012, the special master ordered petitioner to respond to the Secretary's expert reports.  Order, May 22, 2012.  Thereafter, petitioner submitted another expert report authored by Dr. Jubelt.  Pet'r's Ex. 19.  Mr. Spahn also filed an expert report authored by Dr. H. Vasken Aposhian, a toxicologist, who offered an expert opinion about a genetic mutation known as CPOX4.  Dec. at 10; Pet'r's Ex. 20.  In this report, Dr. Aposhian opined that a person who has the CPOX4 mutation is hyper-susceptible to mercury and would be affected by a single dose of thimerosal even into adolescence.  Pet'r's Ex. 20.  Dr. Aposhian also opined that, because Mr. Spahn had a reaction to thimerosal after receiving the Td vaccine, he likely has the CPOX4 mutation.  *Id.*  On January 22, 2013, the Secretary submitted a rebuttal expert report authored by Dr. Johnson that characterized the opinion set forth in Dr. Aposhian's report to be speculation without scientific merit.  Dec. at 10; Resp't's Ex. F.

On February 13, 2013, the special master scheduled a hearing to consider petitioner's claim.  Dec. at 11; Order, Feb. 13, 2013.  The special master also ordered the parties' experts to limit their hearing testimony to what had been disclosed in their respective expert reports.  Order at 1-2, Feb. 13, 2013.  Prior to the hearing date, the parties reached a preliminary settlement agreement.  Dec. at 11; Joint Status Report, May 1, 2013.  But, the Department of Justice subsequently declined to grant the necessary settlement authority to amicably resolve the case.  Dec. at 11; Resp't's Status Report, June 3, 2013.  And so, the special master rescheduled the evidentiary hearing in this matter.  Order, July 1, 2013.

On July 23, 2013, the Secretary filed a motion for summary judgment arguing, among other things, that the expert opinions of Drs. Jubelt and Aposhian lacked credibility.  Dec. at 12; *See* Resp't's Mot. Summ. J.  Mr. Spahn filed an opposition to the Secretary's motion on August 23, 2013, and the Secretary replied on September 12, 2013.  Dec. at 12.

On August 30, 2013, petitioner moved for interim attorney's fees and costs.  *See* Pet'r's Mot. for Expedited Payment of Interim Costs.  On June 3, 2014, petitioner filed a second motion for attorney's fees and for expedited payment of costs.  *See* Pet'r's Second Mot. for Expedited

Payment of Interim Costs. To date, the special master has not ruled on petitioner's motions.[1] Pet'r's Second Mot. for Expedited Payment of Interim Costs at 1.

On September 30, 2013, petitioner filed a prehearing brief that clarified that he alleges that the Td vaccine significantly aggravated his OCD, but did not cause this condition. Dec. at 12; Pet'r's Prehr'g Br. at 1. Because petitioner revised his theory of the case, the special master suggested that petitioner provide additional evidence regarding how the progress of his OCD after the vaccine compares to the disorder's standard progression. Order, July 2, 2013 at 2, 6. Petitioner did not provide any additional evidence. Dec. at 13. And so, the special master resolved the Secretary's motion for summary judgment. *Id*.

### 3. The Special Master's Decisions

On September 11, 2014, the special master issued a decision granting the Secretary's motion for summary judgment and denying petitioner's Vaccine Act claim. *See generally* Dec. In the decision, the special master found that, as a preliminary matter, petitioner's claim depended upon whether thimerosal aggravated petitioner's tics. Dec. at 17. The special master found that the only evidence connecting thimerosal to the tics was the conclusory statements of petitioner's experts, and the special master concluded that such statements were insufficient to create a genuine issue of fact warranting a hearing. *Id*. at 29. And so, the special master determined that disposition of the case on summary judgment was appropriate. *Id*. at 29-31.

With respect to petitioner's medical theory that the thimerosal in the Td vaccine significantly aggravated petitioner's tics, the special master found that the Verstraeten and Andrews epidemiology articles adequately showed that tics could be caused by thimerosal. *Id*. at 19. But, the special master found, among other things, that the Verstraeten and Andrews articles did not apply to petitioner's specific case, because these articles address infants. *Id*. at 21.

The special master also considered several medical articles that petitioner submitted to show the biological mechanism that may have caused, or aggravated, his tics. *Id*. at 22-27. Specifically, the special master considered the article by David Baskin, which stated that cells

---

[1] The Secretary filed responses to both motions, arguing that there was no reasonable basis for Mr. Spahn's claim, and that he was, therefore, not entitled to fees and costs. Resp't's Resp. to Pet'r's Mot. for Expedited Payment of Interim Costs.

exposed to thimerosal can have damaged DNA. *Id*. at 22-23. But, the special master concluded that the dosage of thimerosal that Mr. Spahn received was not enough to be toxic according to this article. *Id*. at 23.

The special master similarly concluded that the James article, upon which petitioner relied to show how thimerosal could deplete the brain chemical glutathione, was also not relevant to petitioner's case, because the dosage of thimerosal addressed in the article was not similar to the dosage that petitioner received. *Id*. at 24.

The special master considered several other medical articles that petitioner cited to in his brief in opposition to the Secretary's motion for summary judgment. *Id*. at 25-26. The special master assessed these articles and ultimately dismissed the articles as irrelevant, because they did not study tics. *Id*. The special master also considered the argument that petitioner's anoxia at birth created a vulnerability to thimerosal, but the special master concluded that petitioner's experts did not demonstrate a connection between anoxia and vulnerability to thimerosal. *Id*. at 27.

Finally, the special master further concluded that, without genetic test results showing whether Mr. Spahn has the CPOX4 mutation, Dr. Aposhian's medical theory that Mr. Spahn has this gene is circular reasoning and insufficient to substantiate petitioner's claim. *Id*. at 27-28. Given this, the special master found that petitioner's evidence had gaps that had not been addressed by petitioner's experts, and that these evidentiary gaps undermined the reliability of the opinion of petitioner's experts. *Id*. at 29. And so, the special master concluded that there was no genuine dispute of material fact and that the material facts in this case showed that petitioner had not proven his significant aggravation claim. *Id*. at 30.

On September 25, 2014, Mr. Spahn moved to redact the decision of the special master to remove the names of petitioner, petitioner's mother and father, petitioner's schools, petitioner's treating physicians, as well as petitioner's birthdate and certain background facts. *See* Mot. to Redact Dec. On October 29, 2014, the special master granted-in part and denied-in-part petitioner's motion. Order Granting-In-Part and Denying-In-Part Mot. to Redact Dec. at 1. In the decision, the special master granted petitioner's request to redact the name of petitioner's father, petitioner's birthdate, and certain background facts. *Id*. at 4-6. But, the special master denied petitioner's request to redact petitioner's name, petitioner's mother's name, as well as the

names of petitioner's schools and treating physicians, because the special master concluded that the petitioner's name had already been published in the Federal Register and none of the other requested redactions fell within the categories of information that the Vaccine Act permits to be redacted. *Id*. at 4-5; 42 U.S.C. § 300-12(d)(4)(B).

Petitioner, alleging error, seeks review of the special master's decisions.

**B. Procedural History**

On October 11, 2014, petitioner filed a motion for review of the September 11, 2014, decision of the special master to deny his Vaccine Act claim. *See* Mot. for Review. The Secretary responded to the motion for review on November 10, 2014. *See* Resp. to Mot. for Review.

On November 26, 2014, petitioner filed a motion for review of the special master's October 29, 2014, decision granting-in-part and denying-in-part-petitioner's motion to redact the special master's September 11, 2014, decision. *See* Mot. for Review of Order on Mot. to Redact Dec. The Secretary filed a response to petitioner's second motion for review on December 29, 2014. Resp. to Mot. for Review of Order on Mot. to Redact Dec.

On February 4, 2015, the Court held a hearing on petitioner's motions for review. *See* Scheduling Order, Jan. 6, 2015. On August 3, 2015, the Court ordered the parties to file supplemental briefs regarding any recent legal authority bearing on the matter. *See* Order, Aug. 3, 2015. On August 14, 2015, petitioner filed a supplemental brief focusing on the United States Court of Appeals for the Federal Circuit's decision in *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368 (Fed. Cir. 2012). Pet'r's Supplemental Brief on Mot. for Review at 2. On August 21, 2015, the Secretary filed a response to petitioner's supplemental brief. Resp't's Resp. to Supplemental Br.

On June 2, 2016, the Court ordered the parties to file supplemental briefs regarding United States Court of Appeals for the Federal Circuit's opinion in *Moriarty by Moriarty v. Sec'y of Health & Human Servs.*, 844 F.3d 1322 (Fed. Cir. 2016). Order, June 2, 2016. On June 17, 2017, the Secretary filed a response to the Court's order. Resp't's Resp. to Order June 2, 2016.

On June 17, 2016, petitioner filed a supplemental brief regarding *Moriarty*. Pet'r's Second Supplemental Brief on Mot. for Review at 3. On June 24, 2016, the Secretary filed a

responsive supplemental brief.  *See* Resp't's Resp. to Pet'r's Second Supplemental Brief on Mot. for Review.

This matter was subsequently reassigned twice–on January 26, 2017, and March 29, 2017.  *See* Notice of Reassignment, January 26, 2017; Notice of Reassignment, March 29, 2017. On May 11, 2017, petitioner moved for leave to file new evidence.  *See* Mot. for Leave to File New Evidence.  On May 18, 2017, the Secretary filed a response and opposition to petitioner's motion for leave to file new evidence.  *See* Resp't's Resp. to Pet'r's Mot. for Leave to File New Evidence.

## III.    STANDARDS FOR DECISION

### A.  Vaccine Act Claims

The United States Court of Federal Claims has jurisdiction to review the record of the proceedings before a special master and, upon such review, may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2).

The special master's determinations of law are reviewed *de novo*.  *Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1373 (Fed. Cir. 2009).  The special master's findings of fact are reviewed for clear error.  *Id*. (citation omitted); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010) ("We uphold the special master's findings of fact unless they are arbitrary or capricious.").  The special master's discretionary rulings are reviewed for abuse of discretion.  *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

In addition, a special master's findings regarding the probative value of the evidence and the credibility of witnesses will not be disturbed so long as they are "supported by substantial evidence."  *Doe v. Sec'y of Health & Human Servs.*, 601 F.3d 1349, 1355 (Fed. Cir. 2010)

(citation omitted); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that the decision of whether to accord greater weight to contemporaneous medical records or later given testimony is "uniquely within the purview of the special master"). This "level of deference is especially apt in a case in which the medical evidence of causation is in dispute." *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993). And so, the Court will not substitute its judgment for that of the special master, "if the special master has considered all relevant factors, and has made no clear error of judgment." *Lonergan v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 579, 580 (1993).

Under the Vaccine Act, the Court must award compensation if a petitioner proves, by a preponderance of the evidence, all of the elements set forth in 42 U.S.C. § 300aa–11(c)(1), unless there is a preponderance of evidence that the illness is due to factors unrelated to the administration of the vaccine.  42 U.S.C. § 300aa–13(a)(1).  A petitioner can recover either by proving an injury listed on the Vaccine Injury Table ("Table"), or by proving causation-in-fact. *See* 42 U.S.C. §§ 300aa–11(c)(1)(C); *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  And so, to receive compensation under the National Vaccine Injury Compensation Program, a petitioner must prove either that:  (1) the petitioner suffered a "Table Injury" that corresponds to one of the vaccinations in question within a statutorily prescribed period of time or, in the alternative, (2) the petitioner's illnesses were actually caused by a vaccine.  *See* 42 U.S.C. §§ 300aa–11(c)(1)(C)(i-ii), 300aa–13(a)(1)(A), 300aa–14(a); *see also Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1320-21 (Fed. Cir. 2006).

In addition, in Table and non-Table cases, a petitioner bears a "preponderance of the evidence" burden of proof.  42 U.S.C. § 300aa–13(a)(1)(A); *Althen*, 418 F.3d at 1278 (citing *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352-53 (Fed. Cir. 1999)).  And so, a petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." *Moberly*, 592 F.3d at 1322 n.2 (brackets existing) (internal quotation omitted); *see also Snowbank Enter. v. United States*, 6 Cl. Ct. 476, 486 (1984) (holding that mere conjecture or speculation is insufficient under a preponderance standard).

To establish a *prima facie* case when proceeding on a causation-in-fact significant aggravation theory, a petitioner must "prove, by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface*, 165 F.3d at 1352.  In addition, petitioner must prove by a preponderance of the evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between the vaccination and the injury. *Althen*, 418 F.3d at 1278.  But, medical or scientific certainty is not required.  *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994).

In *Althen*, the Federal Circuit addressed these three elements to prove causation in fact. *Althen*, 418 F.3d at 1278.  All three elements "must cumulatively show that the vaccination was a 'but-for' cause of the harm, rather than just an insubstantial contributor in, or one among several possible causes of, the harm." *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006).  In addition, if a petitioner establishes a *prima facie* case, the burden shifts to the respondent to show, by a preponderance of the evidence, that the injury was caused by a factor unrelated to the vaccine.  *See* 42 U.S.C. § 300aa–13(a)(1)(B); *Sec'y of Health & Human Servs. v. Whitecotton*, 514 U.S. 268, 270-71 (1995).  But, regardless of whether the burden of proof ever shifts to the respondent, the special master may consider the evidence presented by the respondent in determining whether the petitioner has established a *prima facie* case.  *See Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373, 1379 (Fed. Cir. 2012) ("[E]vidence of other possible sources of injury can be relevant not only to the 'factors unrelated' defense, but also to whether a prima facie showing has been made that the vaccine was a substantial factor in causing the injury in question."); *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1353 (Fed. Cir. 2008) ("The government, like any defendant, is permitted to offer evidence to demonstrate the inadequacy of the petitioner's evidence on a requisite element of the petitioner's case[-]in-chief.").

### B.  Vaccine Rule 8 And RCFC 56

Vaccine Rule 8(d) provides that,

[a] special master may decide a case on the basis of written submissions without conducting an evidentiary hearing.  Submissions may include a motion for

summary judgment, in which event the procedures set forth in RCFC 56 will
apply.

RCFC App. B, Vaccine Rule 8(d); *see also Simanski v. Sec'y of Dept. of Health & Human Servs.*, 671 F.3d 1368, 1371 (Fed. Cir. 2012)(Noting that "the Vaccine Rules provide that the special masters can decide cases on written submissions, including, in appropriate cases, by summary judgment.")

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). After adequate time for discovery, RCFC 56 mandates the entry of summary judgment against a party who fails to establish an element of the case on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Federal Circuit has also recognized that, in ruling on a motion for summary judgment, a special master can decide whether the petitioner's evidence is sufficient to allow the matter to proceed to a hearing. *Simanski*, 671 F.3d at 1382.

### C.  Redaction, Vaccine Rule 18

Generally, decisions of the special master are publically disclosed without redactions. 42 U.S.C. § 300aa-12(d)(4). But, the Vaccine Act provides that financial information and medical files are eligible for redaction. *Id.* Specifically, section 300aa-12(d)(4)(B) of the Vaccine Act provides, in pertinent part, that:

A decision of the special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –

(i) which is a trade secret or commercial or financial information which is privileged and confidential, or

(ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,

and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa-12(d)(4)(B).  The decision to redact a special master's decision is a question of law.  *W.C. v. Sec'y of Health & Human Servs.*, 100 Fed. Cl. 440, 457 (2011).  And so, a special master's decision in this regard is reviewed *de novo*.  *Andreu*, 569 F.3d at 1373.

### D.  Contracts With The United States

To bring a valid contract claim against the United States in this Court, the underlying contract must be either express or implied-in-fact.  *Aboo v. United States*, 86 Fed. Cl. 618, 626-27 (2009).  In addition, the party alleging the existence of a contract bears the burden of proving the existence of a contract with the United States, and the party must show that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights."  *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

To establish the existence of either an express or implied-in-fact contract with the United States, the party alleging the existence of a contract must show:  "(1) mutuality of intent; (2) consideration; (3) an unambiguous offer and acceptance;" and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  A government official's authority to bind the United States must be express or implied.  *Roy v. United States*, 38 Fed. Cl. 184, 188-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."  *Id.* at 187.

In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."  *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citation omitted).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (implied actual authority "is restricted to situations where 'such authority is considered to be an integral

13

part of the duties assigned to a [g]overnment employee.'") (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)).  In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority.  *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).[2]

### E.  Attorneys' Fees

When a special master awards compensation to a petitioner, the Vaccine Act directs the special master to award "reasonable attorneys' fees, and other costs, incurred in any proceeding on such petition."  42 U.S.C. § 300aa-15(e)(1).  If the petitioner does not prevail on his or her claim and is, thus, denied compensation, the special master "may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  *Id.*; *see also Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013); *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993).  And so, the Vaccine Act affords to the special master discretion regarding whether to award attorneys' fees and costs when the special master denies compensation.  *Saxton*, 3 F.3d at 1520.

Within the context of a petition brought under the Vaccine Act, good faith is a subjective standard.  *See, e.g., Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 5180524, at *2 (Fed. Cl. Aug. 31, 2007); *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).  And so, the Court has held that the good faith standard focuses on whether the petitioner

---

[2] Ratification may take place at the individual or institutional level.  *SGS-92-X003*, 74 Fed. Cl. at 653-54.  Individual ratification occurs when a supervisor: (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate.  *Id.* at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)).  In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract."  *SGS-92-X003*, 74 Fed. Cl. at 654; *see also Janowsky*, 133 F.3d at 891–92.

"honestly believed he had a legitimate claim for compensation." *See Turner*, 2007 WL 5180524, at *2 (citing *Di Roma*, 1993 WL 496981, at *1).

With respect to determining whether "there was a reasonable basis for the claim," this Court has also held that a petitioner must prove, by "something less than preponderant evidence," that he or she had a reasonable basis for filing the claim. *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *see, e.g.*, *Simmons v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 579, 583 (2016), *appeal docketed*, No. 17-1405 (Fed. Cir. Dec. 23, 2016).  However, "[n]either the Federal Circuit nor this Court has had occasion to define . . . 'reasonable basis' for purposes of fee awards under the Vaccine Act." *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 153 (2012); *see also Chuisano*, 116 Fed. Cl. at 285 (holding that the reasonable basis standard is "amorphous" and "not rigidly defined").

This Court has looked to the totality of the circumstances to determine whether a petitioner's claim had a reasonable basis at the time the petition was filed. *Simmons*, 128 Fed. Cl. at 583 (applying a totality of the circumstances test in reviewing reasonable basis of claim); *McKellar*, 101 Fed. Cl. at 303 ("The presence of a reasonable basis is an objective consideration determined by the totality of the circumstances.") (citation omitted).  The Court has also held that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis because the petitioner could not meet the burden of proof needed to establish reasonable basis." *Chuisano*, 116 Fed. Cl. at 286 (citation omitted); *see also Simmons*, 128 Fed. Cl. at 583.  In addition, the Court has considered factors "such as 'the factual basis, the medical support… jurisdictional issues,' including the statute of limitations," and the attorney's diligence in bringing the claims, when considering whether there was a reasonable basis for a claim. *Simmons*, 128 Fed. Cl. at 583 (citing *Chuisano*, 116 Fed. Cl. at 288); *cf. Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 92-93 (2016) (finding that the attorney "has done meaningful work on this case").

## IV.   LEGAL ANALYSIS

### A.  The Special Master Did Not Err In His Findings Of Fact

As an initial matter, the record evidence shows that the special master properly determined that petitioner was suffering from OCD before the 2007 Td vaccination.  The Court

reviews the special master's findings of fact for clear error.  *Andreu ex rel. Andreu v. Sec'y of Dep't of Health & Human Servs.*, 569 F.3d 1367, 1373 (Fed. Cir. 2009).

The record evidence supports the special master's finding that petitioner "was suffering from obsessive-compulsive disorder" when petitioner received the Td vaccine on June 19, 2007. Dec. at 1.  Specifically, the record evidence shows that one of petitioner's treating physicians, Dr. Berry-Kravis, reviewed petitioner's medical history in April 2008, and she found at the time that petitioner reported episodes of repetitive touching−a symptom of OCD−during childhood. Pet'r's Ex. 12 at 12.  The record evidence also shows that Dr. Berry-Kravis found that petitioner's mother reported that petitioner experienced another symptom of OCD−episodes of stereotypic movements−prior to 2007.  *Id.*

During the proceedings before the special master, petitioner also acknowledged that his OCD preceded the 2007 Td vaccination at issue, when he changed the legal theory of this case to one of "significant aggravation of his previously dormant minor OCD" in 2013.  Pet'r's Prehr'g Br., Sept. 30, 2013, at 1.  And so, the special master appropriately determined that the statements in the record by Dr. Berry-Kravis and petitioner's own acknowledgement demonstrate that petitioner experienced symptoms of OCD prior to the subject vaccination.

The record evidence also shows that the special master appropriately found that petitioner could have obtained a laboratory test to determine whether petitioner had the CPOX4 gene to support his medical theory in this case.  Dec. at 28.  Although petitioner alleges that he is hyper-susceptible to mercury, because he has the CPOX4 gene−and that this mercury sensitivity would have caused an adverse reaction to a single dose of thimerosal contained in the Td vaccine−the special master found that there was no evidence in the expert report provided by petitioner's toxicology expert, or elsewhere, to show that petitioner actually has the CPOX4 gene.  Dec. at 28; Pet'r's Ex. 20.  The special master also found that petitioner "could have solved this evidentiary gap by obtaining a genetic test, and [that he] was given months to pursue genetic testing and did not do so."  *Id.*

The record evidence supports the special master's findings.  As the government observed during the proceedings before the special master, "any laboratory that performs genetic testing can acquire the materials necessary to perform the [CPOX4 genetic] test."  Resp't's Reply Br. in Supp. Mot. for Summ. J., at 4.  Petitioner neither disputes that he failed to secure this genetic

test, nor does he point to any evidence in the record to show that he searched for a laboratory to perform this test.  *See generally* Pet'r's Mot. for Review.  And so, the special master appropriately concluded that although petitioner could have obtained genetic testing to support his medical theory, petitioner failed to do so.  Dec. at 28-29.

### B.  The Special Master Did Not Err By Forgoing An Evidentiary Hearing

The evidentiary record also shows that the special master did not err by declining to hold an evidentiary hearing in this matter.  In his motion for review, petitioner alleges that the special master violated petitioner's due process rights by declining to hold an evidentiary hearing on petitioner's claim and by issuing a prehearing order limiting expert testimony to the information presented in the experts' respective written submissions.  Pet'r's Mot. for Review at 4-6.  The Court reviews the special master's interpretation of the Vaccine Rules with regards to evidentiary hearings *de novo*.  *Andreu*, 569 F.3d at 1373.  The Court reviews the special master's instructions regarding the testimony of expert witnesses for abuse of discretion.  *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

First, the special master properly interpreted the Vaccine Rules and did not err in declining to conduct an evidentiary hearing on petitioner's claim.  In general, taking evidence and hearing argument in Vaccine Act matters is governed by Vaccine Rule 8, which provides, in relevant part, that "[t]he special master will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties."  RCFC App. B, Vaccine Rule 8(a).  In addition, Vaccine Rule 8(d), affords the special master the discretion to decline to conduct an evidentiary hearing, and the rule provides that:

> The special master may decide a case on the basis of written submissions without conducting an evidentiary hearing.  Submissions may include a motion for summary judgment, in which event the procedures set forth in RCFC 56 will apply.

RCFC App. B, Vaccine Rule 8(d).  The discretion afforded by Vaccine Rule 8(d) "is tempered by Vaccine Rule 3(b) which requires that each party have a full and fair opportunity to present its case."  *Campbell ex. rel. Campbell*, 69 Fed. Cl. 775, 778 (2006), (quoting *Hovey v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 397, 400–01 (1997)); RCFC App. B, Vaccine Rule 3(b).  And so, while a special master has the obligation to afford a party a full and fair opportunity to present its case, a special master has no obligation to conduct an evidentiary hearing.

The record evidence in this case shows that the special master reasonably concluded that an evidentiary hearing was not warranted, given the significant evidentiary record already before the special master.  Indeed, the record evidence shows that, during the proceedings before the special master, both parties submitted a substantial amount of evidence–including several expert reports and medical literature–to support their respective positions in this case.  In particular, petitioner submitted three expert reports authored by his neurologist, Dr. Jubelt.  Dec. at 7, 9; Pet'r's Ex. 14, 18, 19.  Petitioner also submitted an expert report authored by his toxicologist, Dr. Aposhian.  Dec. at 10; Pet'r's Ex. 20.  In addition, the Secretary submitted two expert reports challenging the opinions of petitioner's experts.  Dec. at 9; Resp't's Ex. A, C.

The petitioner and the Secretary also both submitted several medical articles to either support or refute petitioner's Vaccine Act claim.  Particularly relevant here, petitioner filed three scholarly articles regarding the safety of thimerosal authored by Nick Andrews, Kathleen Stratton, and Thomas Verstraeten, respectively.  Dec. at 8; Pet'r's Ex. 17-1, 17-2, 17-3. Petitioner's expert, Dr. Jubelt, also put forward another medical article, authored by S.J. James, to support his expert report.  Pet'r's Ex. 18-2.  In addition, after petitioner clarified that he asserts a significant aggravation claim in this matter, the special master provided an opportunity for petitioner to provide additional evidence regarding how the progress of his OCD following the Td vaccination compares to a standard OCD progression.  Dec. at 12-13 n.13.  And so, in light of the extensive evidentiary record, the special master reasonably determined that an evidentiary hearing was not warranted.

The evidentiary record also makes clear that the special master did not err by instructing the expert witnesses in this matter to limit their testimony during any evidentiary hearing to the matters addressed in their written submissions.  Dec. at 11; Prehr'g Order, Feb. 13, 2013.  The Federal Circuit has recognized that, when considering such evidence, a special master has the discretion to restrict testimony to the parties' written submissions.  *See Simanski*, 671 F.3d at 1382 ("The special master can order the experts to confine their testimony to the issues addressed in their reports.").[3]  In this case, the special master appropriately instructed the parties'

---

[3] Congress has also recognized that special masters have discretion in deciding whether to convene evidentiary hearings.  The Vaccine Act provides that the rules for Vaccine Act proceedings should "include the opportunity for parties to submit arguments and evidence on the record without requiring routine use of oral presentations, cross examinations, or hearings. . . . "  42 U.S.C. § 300aa–12(d)(2)(D).

expert witnesses to so limit their testimony, given the significant evidence already before the special master, including six expert reports.  Dec. at 11; Prehr'g Order, Feb. 13, 2013.  And so, under these circumstances, the special master appropriately exercised his discretion to limit the testimony of the parties' experts.[4]  *Plummer v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 304, 307 (1991) (holding the Vaccine Act does not require an evidentiary hearing).

### C.  The Special Master Properly Granted Summary Judgment

Petitioner's objection that the special master's decision to resolve this claim by granting the Secretary's motion for summary judgment deprived him of a full and fair opportunity to present his claim is similarly unsubstantiated by the record evidence.  *See* Pet'r's Mot. for Review at 16-20.  Vaccine Rule 8(d) specifically recognizes that the parties' "[s]ubmissions may include a motion for summary judgment, in which event the procedures set forth in Rule 56 will apply."  RCFC App. B, Vaccine Rule 8.  This rule also authorizes the special master to "decide the case on the basis of written submissions without conducting an evidentiary hearing." *Id.* And so, the United States Court of Appeals for the Federal Circuit has held that a special master may "decide whether the petitioner's evidence is sufficient to allow the matter to proceed to a hearing."  *Simanski*, 671 F.3d at 1382.  But, the Federal Circuit has also recognized that resolving a case on summary judgment can raise due process concerns when doing so resolves aspects of the case at an arbitrary point in the litigation.  *Jay v. Sec'y of Health & Human Servs.*, 998 F.2d 979, 983 (Fed. Cir. 1993).

In this case, the record evidence shows that the special master reasonably determined that petitioner's case should be resolved on summary judgment, because petitioner's significant aggravation claim depended upon whether thimerosal could aggravate petitioner's tics, and the only evidence in the record connecting thimerosal to tics were the conclusory statements by the petitioner's experts.  Dec. at 17, 29.  After reviewing the petitioner's expert reports, the special

---

In addition, the Vaccine Act provides that a special master "may conduct such hearings as may be reasonable and necessary."  42 U.S.C. § 300aa–12(d)(3)(B)(v).

[4] Petitioner's reliance upon *Richardson ex. rel. Richardson v. Sec'y of Health & Human Servs*, 89 Fed. Cl. 657, 660 (2009), to argue that the special master's order regarding expert testimony violates the general guarantee of fairness is also misplaced.  *See* Pet'r's Mot. at 4.  *Richardson* is factually distinguishable from this case because the special master in that case committed procedural violations− including conducting her own cross-examination and interrupting the proceedings−that are not present here. *Richardson*, 89 Fed. Cl. at 659; RCFC App. B, Vaccine Rule 8(b)(1).

master also concluded that the statements of petitioner's experts were insufficient to create a genuine issue of fact warranting a hearing. *Id.* at 29-30. And so, the special master reasonably determined that disposition of the case on summary judgment was appropriate. *Id.* Given this, petitioner has not shown that he was prejudiced by the special master's decision, or that the special master's decision to resolve this case on summary judgment occurred at an arbitrary point in this litigation.

### D.  The Special Master Did Not Require Scientific Certainty

Petitioner's claim that the special master erred by requiring scientific certainty to prove petitioner's significant aggravation claim is also unsubstantiated by the evidentiary record. *See* Pet'r's Mot. for Review at 15-16. In his motion for review, petitioner alleges that the special master required that petitioner prove his claim by a scientific certainty, because the special master found Dr. Aposhian's expert opinion to be based upon circular reasoning. *Id.* Petitioner further alleges that Dr. Aposhian's expert opinion is circumstantial evidence and the special master erred by not considering this evidence. *Id.* Neither of petitioner's objections is unsupported by the record evidence.

It is well-established that medical or scientific certainty is not required to prove causation in a Vaccine Act case. *Moberly*, 592 F.3d at 1324. But, it is also well-established that petitioner must present more than a possible causal link between a vaccine and an injury, and he must show that any causal link between a vaccine and injury is based upon "persuasive" and "reputable" evidence. *Paterek v. Sec'y of Health & Human Servs.*, 527 F. App'x 875, 879 (Fed. Cir. 2013); *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994). And so, a special master should assess petitioner's claims here for a "sound and reliable" medical or scientific explanation based on evidence that is "relevant and reliable." *Knudsen*, 35 F.3d at 548; RCFC App. B, Vaccine Rule 8(b)(1).

In addition, the Federal Circuit has held that a special master is "entitled to require some indicia of reliability to support the assertion of the expert witness." *Moberly*, 592 F.3d at 1324. The Federal Circuit has also held that a special master must consider circumstantial evidence and that a special master should not dismiss a physician's opinion strictly for relying upon circumstantial inferences. *See Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1324 (Fed. Cir. 2006).

Here, the evidentiary record shows that the special master did not require proof of petitioner's claim with scientific certainty because the special master discounted the opinion of Dr. Aposhian.  During the proceedings before the special master, the special master determined that the sequence of cause and effect advanced by Dr. Jubelt to show that the Td vaccine significantly aggravated petitioner's OCD was not logically sound, because of the low dosage of thimerosal at issue in this case.  Dec. at 22-28.  To address this concern, petitioner subsequently submitted an expert report by Dr. Aposhian, which opined that petitioner likely has the CPOX4 genetic mutation, making petitioner susceptible to the small doses of mercury found in thimerosal.  *See* Pet'r's Ex. 20.

But, as the special master noted in his decision, Dr. Aposhian reached this opinion without obtaining, or reviewing, the results of any genetic testing with regards to petitioner.  *Id.*; Dec. at 27-29.  Instead, Dr. Aposhian simply opined that petitioner must have the CPOX4 genetic mutation because petitioner apparently had an abnormal reaction to the Td vaccine.  *See* Pet'r's Ex. 20.  It is also without dispute that petitioner has not received genetic testing to determine whether he has the CPOX4 genetic mutation.  *See* Pet'r's Mot. for Review at 10. Given this, the evidentiary record shows that the special master appropriately considered and weighed Dr. Aposhian's expert testimony and that the special master understandably found the reasoning of Dr. Aposhian's expert testimony to be circular and unreliable.  *Dodd v. Sec'y of Health & Human Servs.*, 114 Fed. Cl. 43, 52 (2013); *Holmes v. Sec'y of Health & Human Servs.*, 115 Fed. Cl. 469, 490 (2014) (holding that it was not arbitrary or capricious for a special master to find an expert witness' testimony unreliable when the testimony depended upon circular reasoning).

The record evidence also shows that the special master considered Dr. Aposhian's expert opinion and reasonably concluded that Dr. Aposhian's expert report did not substantiate petitioner's claim, because the participants and outcomes in the studies cited in Dr. Aposhian's expert report differ greatly from petitioner.  Dec. at 28.  In this regard, the special master found that:

> Dr. Aposhian is relying upon a study whose participants and their outcomes differ greatly from [petitioner] . . . . [I]n contrast to [petitioner], the children with a CPOX4 mutation who [were harmed] in various neurobehavioral aspects were chronically exposed to . . . mercury.

*Id.* (quotation omitted).  Petitioner does not dispute that the studies relied upon by Dr. Aposhian involve chronic exposure to mercury among children.  *See* Pet'r's Ex. 20.  Nor does petitioner dispute that Dr. Aposhian's expert report fails to explain how the single dose of thimerosal that petitioner received in adolescence, *via* the Td vaccine, could be comparable to the multiple doses of thimerosal at issue in the subject studies.  Pet'r's. Ex. 20.  And so, the special master reasonably found that the studies and Dr. Aposhian's expert report did not substantiate petitioner's claim.  *See Paterek*, 527 F. App'x at 879 (Holding that a causal link between vaccine and injury must be based upon persuasive and reputable evidence.)

### E. The Special Master Did Not Err In Denying-In-Part Petitioner's Redaction Requests

The special master also did not err by declining to redact the names of petitioner, petitioner's mother, petitioner's schools, and petitioner's treating physicians from the special master's September 11, 2014 decision.  The special master's decision to redact this decision is guided by the Vaccine Act, which provides, in relevant part, that:

A decision of the special master or the court in a proceeding shall be disclosed, except that if the decision is to include information--

(i) which is a trade secret or commercial or financial information which is privileged and confidential, or

(ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,

and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa-12(d)(4)(B).  And so, the Vaccine Act, generally, encourages the public disclosure of special master decisions, unless the information contained therein is trade secret, confidential, or privileged, commercial or financial information, or medical files.  *Id.*

Congress has also mandated that Vaccine Act petitions be filed in the Federal Register.  42 U.S.C. § 300aa-12(b)(2).  And so, the Vaccine Act makes clear that Congress did not intend

for Vaccine Act claimants to be anonymous.[5]  *Id.*; *Anderson v. Sec'y of Health & Human Servs.*, No. 08–0396V, 2014 WL 3294656, at *5 (Fed. Cl. Spec. Mstr. June 4, 2014) (citation omitted).

The evidentiary record in this case shows that the special master correctly interpreted the Vaccine Act and declined to redact the names of petitioner, petitioner's mother, petitioner's schools, and petitioner's treating physicians from the public version of the special master's decision.  Dec. Granting-In-Part and Denying-In-Part Mot. to Redact.  While petitioner argues that the special master's decision not to redact this information will result in an unwarranted invasion of his privacy, there is simply no requirement under the Vaccine Act that the special master make these redactions.  Pet'r's Mot. for Review of Order on Mot. to Redact Dec. at 5.  In fact, the redactions that petitioner seeks are not the kind of medical, or confidential, or privileged, financial information that the Vaccine Act requires to be withheld from public view.  42 U.S.C. § 300aa-12(d)(4)(B).  Permitting the redactions that petitioner seeks in this case would also run afoul of the Vaccine Act's general requirement that special master decisions be publicly disclosed.  *Id*.  And so, the special master did not err in denying-in-part petitioner's motion to redact.

### F. The Special Master Did Not Err By Declining To Enforce The Parties' Preliminary Settlement Agreement

In addition, petitioner's claim that his unsuccessful settlement negotiations with the government resulted in a binding contract with the United States is without merit.  It is undisputed that the parties in this case reached a preliminary settlement agreement to fully resolve this matter in April 2013.  Joint Status Report, May 1, 2013.  There is also no dispute that this preliminary agreement was reached between petitioner and an Assistant Director of the Torts Branch, Civil Division of the United States Department of Justice.  *Id*.; Dec. at 11.

---

[5] The use of a minor's initials instead of the full name in Vaccine Act matters has been authorized by rules promulgated by the Supreme Court, as directed by the E-Government Act of 2002.  *See* Fed. R. Civ. P. 5.  The United States Court of Federal Claims updated its rules in 2011 to reflect those changes.  *See* RCFC 5(2)(a).  In addition, some special masters have approached the issue of redaction as suggested in *Langland v. Sec'y of Health & Human Servs.*, No. 07–36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011), which favors limited redaction based upon the text of the Vaccine Act.  In other cases, special masters have followed *W.C. v. Sec'y of Health & Human Servs.*, 100 Fed. Cl. 440 (2011), which applies a balancing test to weigh the interests for and against redaction.

The record evidence also shows that, when the parties reached a preliminary settlement agreement, they filed a joint status report stating that the settlement agreement was "'tentative' as [it] must be approved by officials at both the Department of Health and Human Services and the Department of Justice." Joint Status Report, May 1, 2013; Pet'r's Mot. for Review at 11. And so, there can be no genuine dispute that the preliminary settlement agreement that the parties reached was only tentative and that the government attorney who entered into that agreement did not have the authority to contractually bind the government.

It is well-established that a binding settlement agreement with the government only exists if that agreement is entered into by a government representative who has actual settlement authority. *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998). It is also well-established that the Department of Justice's regulations assign settlement authority for Vaccine Act matters to the Director of the Civil Division, Torts Branch. 28 C.F.R. part 0, subprt Y, app. Because the record evidence here makes clear that a government official with settlement authority did not approve the preliminary settlement agreement by and between petitioner and the government, the special master had no authority to enforce such an agreement.[6] *See* Joint Status Report, June 3, 2013. And so, the special master did not err by declining to enforce the parties' preliminary settlement agreement. *See Tompkins v. United States*, 117 Fed. Cl. 713, 722 (2014) (finding that a settlement agreement lacking the signature of the authorized representative of the Attorney General was not legally enforceable, and affirming that the special master lacked the authority to enforce the preliminary settlement).

### G. The Special Master Did Not Abuse His Discretion In Connection With Petitioner's Motions For Attorney's Fees And Costs

The evidentiary record similarly does not substantiate petitioner's claim that the special master attempted to intimidate petitioner by implying that petitioner's claim lacked a reasonable basis. As petitioner correctly notes in his motion for review, the special master has not decided either of petitioner's motions for attorney's fees and costs, notwithstanding the passage of more

---

[6] Petitioner's reliance upon the Restatement (Second) of Agency, to argue that he is justified in inferring that the assigned government attorney had the authority to settle this matter based upon the attorney's position, is misplaced. Pet'r's Mot. for Review at 10-13; *See* Restatement (Second) of Agency 2d., § 49, cmt. 3. The record evidence makes clear that every representation by the government's attorney regarding the status of settlement negotiations noted that any agreement was subject to the approval of the appropriate officials within the Department of Justice. *See, e.g.,* Joint Status Report, May 1, 2013.

than three years since petitioner's motion for interim attorney's fees and costs has been filed. *See* Pet'r's Mot. for Expedited Payment of Interim Costs.

But, petitioner's claims that the special master attempted to intimidate petitioner by refusing to rule on petitioner's motion for interim attorney's fees and costs and made "repeated threats at status conferences throughout the pendency of this case" are simply not substantiated by the evidence in the record.  Pet'r's Mot. for Review at 7-8.  Indeed, petitioner points to no evidence in the record to show that the special master intimidated or threatened petitioner.  *Id.*  In addition, as the Secretary notes in her response to the petitioner's motion for review, the question of whether there was a reasonable basis for petitioner's claim arose within the context of the Secretary's motion for summary judgment, which had been filed before petitioner moved for interim attorney's fees and costs.  Resp't's Resp. to Mot. for Review at 16.  And so, the special master reasonably refrained from deciding petitioner's interim motion at the time, because the special master was weighing the merits of this case.  Given this, the evidentiary record simply does not support a finding that the special master attempted to threaten or intimidate petitioner by delaying the resolution of these motions.

Lastly, while the Court does not reach the merits of petitioner's motions for fees and costs, the Court agrees with petitioner that the evidentiary record before the Court shows that petitioner had a reasonable basis for bringing this Vaccine Act case.[7]  As discussed above, the record evidence shows that petitioner submitted several expert reports and substantial medical literature to support his claim.  Pet'r's Ex. 14, 18-20.  Specifically, petitioner has put forward evidence to show that his tics were noted by school officials immediately after he returned to school following the administration of the Td vaccine.  Pet'r's Ex. 11-13.  As the special master acknowledged in his decision, several of the medical articles put forward by petitioner also establish that vaccines could cause tics.  Dec. at 19.

In addition, the record evidence shows that petitioner filed three scholarly articles regarding the safety of thimerosal as well as findings about thimerosal dosage from the Institute for Vaccine Safety and the Illinois Department of Public Health.  Dec. at 8; Pet'r's Ex. 15, 16,

---

[7] The Court views the issues relevant to petitioner's motions for attorney's fees and costs to fall within the scope of petitioner's motion for review, because petitioner alleges that the special master attempted to intimidate petitioner by refusing to rule on these motions. Pet'r's. Mot. For Review at 7-8.

17, 17-1, 17-2, 17-3.  And so, while the Court shares with the special master's view that petitioner has not met his burden to prove, by a preponderance of the evidence, that the Td vaccine that petitioner received on June 19, 2007, significantly aggravated his OCD, petitioner has put forward some probative evidence to support this claim.[8]

### H.  The Court Denies Petitioner's Motion For Leave To File New Evidence

As a final matter, petitioner may not introduce new evidence to support his Vaccine Act claim at this late stage in this litigation.  *See* RCFC 59(a)(2); RCFC App. B, Vaccine Rule 8(b).  On May 11, 2017, petitioner moved to submit a 2017 medical article authored by Dr. Douglas Leslie, which addresses a potential link between thimerosal and neuropsychiatric disorders, in adolescents, and a letter from Dr. Jubelt summarizing this article.  Pet'r's Mot. for Leave to File New Evidence; Ex. 63, 64.  The Secretary opposes petitioner's motion upon the ground that the government would be prejudiced if the Court allows petitioner to submit new evidence that would not have been available for review if this matter had been timely resolved under the Vaccine Act.  Resp't's Resp. to Mot. for Leave to File New Evidence.

RCFC 59(a)(2) addresses grounds for a new trial or reconsideration, and this rule provides that after a trial, "[t]he court may, on motion under this rule, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  RCFC 59(a)(2).  Vaccine Act Rule 8(b) also provides that, "[i]n receiving evidence, the special master will not be bound by common law or statutory rules of evidence but must consider all relevant and reliable evidence governed by principles of fundamental fairness to both parties."  RCFC App. B, Vaccine Rule 8(b).

In light of these standards, petitioner's reliance upon RCFC 59(a)(2) to submit new evidence is misplaced, because petitioner is not seeking a new trial or reconsideration in this matter.  *See* Pet'r's Mot for Review.  Petitioner is, however, correct in arguing that Vaccine Rule

---

[8] The record evidence also shows that petitioner's attorney was diligent in prosecuting this matter.  See Dec. at 7-12.  Counsel for petitioner filed medical records, four expert reports, several pre-hearing briefs, and supplemental briefs as required during the course of this litigation.  See *id.*; Pet'r's Second Supplemental Brief on Mot. for Review.  Counsel for petitioner also participated in settlement negotiations in good faith and used the proper procedures to seek review of petitioner's case.  See Joint Status Report, May 1, 2013; Pet'r's Mot. for Review.

8(b) requires that the Court "consider all relevant and reliable evidence governed by principles of fundamental fairness to both parties" in this case.  RCFC App. B, Vaccine Rule 8(b); *see Plavin v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 609, 621 (1998) (holding Vaccine Rule 8(b) encourages informal proceedings which do not follow standard Federal Rules of Evidence, and the Court may direct the special master to consider additional evidence, even after a hearing); *Vant Erve v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 607, 612 (1997).

But, permitting petitioner to introduce new evidence here−almost three years after the evidentiary record closed in this matter−would clearly prejudice the Secretary.  As the United States Court of Appeals for the Federal Circuit has held, it is not an abuse of discretion for the Court to decline to supplement the record in a Vaccine Act case with new evidence when a case has progressed to the review stage.  *Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373, 1386 (Fed. Cir. 2012).  More importantly, while the new medical article that petitioner seeks to introduce may be helpful in addressing the lack of evidence showing that thimerosal could aggravate OCD in adolescents, this article does not address the other evidentiary weaknesses in petitioner's claim, regarding the low dosage of thimerosal contained in petitioner's Td vaccine and the lack of genetic testing to show whether petitioner has the CPOX4 mutation.  Pet'r's Ex. 65.  And so, the Court denies petitioner's motion for leave to file new evidence.

## V.    CONCLUSION

In sum, the record evidence in this matter shows that the special master's decision to deny petitioner's Vaccine Act claim is reasonable and supported by the record evidence.  The record evidence similarly shows that the special master appropriately declined to redact petitioner's name, petitioner's mother's name, as well as the names of petitioner's schools and treating physicians, from the special master's September 11, 2014, decision.

In addition, as both parties have observed, the special master denied petitioner's claim in 2014 and petitioner filed the motion for review on October 11, 2014.  Given this, the introduction of new evidence at this late stage in the litigation is not warranted and could prejudice the government.  The Court must also note that this Court has an obligation to ensure the just, speedy and inexpensive determination of every action.  *See* RCFC 1.  And so, the Court apologizes to the parties for the delay in resolving this matter.

For the foregoing reasons, the Court:

1.      **DENIES** petitioner's motion for review of the special master's September 11, 2014, decision and **SUSTAINS** the decision of the special master;

2.      **DENIES** petitioner's motion for review of the special master's October 29, 2014, decision on petitioner's motion to redact and **SUSTAINS** the decision of the special master; and

3.      **DENIES** petitioner's motion for leave to file new evidence.

4.      The Court also **REMANDS** this matter to the special master for a period of 90 days, until October 27, 2017, for the special master to resolve petitioner's pending motions for attorney's fees and costs.  The parties shall **FILE** a joint status report 30 days after the date of this Memorandum Opinion and Order, and every 30 days thereafter, regarding the status of the remand proceedings and the resolution of the petitioner's motions.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered privileged, confidential or sensitive personally-identifiable information that should be protected from disclosure.  And so, this Memorandum Opinion and Order shall be **FILED UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted prior to publication.  The parties shall also **FILE**, by **August 28, 2017**, a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby_____
LYDIA KAY GRIGGSBY
Judge